UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LANCE WILLIAMS,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>A. ROCHA, et al.,<br><br>　　　　　Defendants. | Case No.: 1:24-cv-001506-CDB<br><br>**FINDINGS AND RECOMMENDATIONS TO DISMISS CERTAIN CLAIMS AND THE DOE DEFENDANT FOLLOWING SCREENING OF PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br><u>14-DAY OBJECTION PERIOD</u><br><br>Clerk of the Court to Assign District Judge |

Plaintiff Lance Williams is proceeding pro se and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. section 1983.

## I.　INTRODUCTION

On February 18, 2026, the Court issued its First Screening Order. (Doc. 18.) The Court determined that Plaintiff stated plausible Eighth Amendment excessive force, failure to protect, and deliberate indifference to serious medical needs against Defendants Rocha and Florez in Claim I but failed to allege any other plausible claim against any other named defendant in Claim II or Claim III. (*Id*. at 4-15.) Plaintiff was directed to do one of the following within 21 days: (1) notify the Court in writing that he did not wish to file a first amended complaint and was willing to proceed only on the Eighth Amendment excessive force claims against Defendants Rocha and Florez (Claim I); Eighth Amendment failure to protect claims against Defendants Rocha and

Florez (Claim I); and Eighth Amendment deliberate indifference to serious medical needs claims against Defendants Rocha and Florez (Claim I) with the remaining claims against any defendant to be dismissed; or (2) file a first amended complaint curing the deficiencies identified by the Court; or (3) file a notice of voluntary dismissal. (*Id*. at 17.)

On March 10, 2026, Plaintiff filed a document titled "Notice of Filing of Amended Complaint and Clarification of Courts Screening and Request for Extension." (Doc. 19.)

On March 11, 2026, Plaintiff filed a first amended complaint. (Doc. 20.) That same date, the Court granted Plaintiff a 30-day extension of time within which to file a first amended complaint and addressed his request for clarification. (*See* Doc. 21.)

Given Plaintiff's filing of March 11, the Court presumes Plaintiff did not need the requested extension of time and will screen the first amended complaint.

## II.    SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). The Court should dismiss a complaint if it lacks a cognizable legal theory or fails to allege sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

## III.    PLEADING REQUIREMENTS

### A.  Federal Rule of Civil Procedure 8(a)

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002). A complaint must contain "a short and plain statement of the claims showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz*, 534 U.S. at 512 (internal quotation marks & citation omitted).

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a

2

cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). Factual allegations are accepted as true, but legal conclusions are not. *Id*. (citing *Twombly*, 550 U.S. at 555).

The Court construes pleadings of pro se prisoners liberally and affords them the benefit of any doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citation omitted). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations," not his legal theories. *Neitzke v. Williams*, 490 U.S. 319, 330 n.9 (1989). Furthermore, "a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled," *Bruns v. Nat'l Credit Union Admin*., 122 F.3d 1251, 1257 (9th Cir. 1997) (internal quotation marks & citation omitted), and courts "are not required to indulge unwarranted inferences." *Doe I v. Wal-Mart Stores, Inc.*, 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks & citation omitted). The "sheer possibility that a defendant has acted unlawfully" is not sufficient to state a cognizable claim, and "facts that are merely consistent with a defendant's liability" fall short. *Iqbal*, 556 U.S. at 678 (internal quotation marks & citation omitted).

### B. Linkage and Causation

Section 1983 provides a cause of action for the violation of constitutional or other federal rights by persons acting under color of state law. *See* 42 U.S.C. § 1983. To state a claim under section 1983, a "plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998); *see Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"); *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) ("The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation") (citing *Rizzo v. Goode*, 423 U.S. 362, 370-71, 375-77 (1976)). The Ninth Circuit has held that "[a] person 'subjects' another to the

3

deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legal required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978) (citation omitted).

### C. Supervisory Liability

Liability may not be imposed on supervisory personnel for the actions or omissions of their subordinates under the theory of respondeat superior. *Iqbal*, 556 U.S. at 676-77; *see e.g., Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1020-21 (9th Cir. 2010) (plaintiff required to adduce evidence the named supervisory defendants "themselves acted or failed to act unconstitutionally, not merely that subordinate did"), *overruled on other grounds by Castro v. Cnty of Los Angeles,* 833 F.3d 1060, 1070 (9th Cir. 2016); *Jones v. Williams,* 297 F.3d 930, 934 (9th Cir. 2002) ("In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation: there is no respondeat superior liability under section 1983").

Supervisors may be held liable only if they "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." *Corales v. Bennett*, 567 F.3d 554, 570 (9th Cir. 2009).  Accord *Starr v. Baca*, 652 F.3d 1202, 1205-06 (9th Cir. 2011) (supervisory liability may be based on inaction in the training and supervision of subordinates).

Supervisory liability may also exist without any personal participation if the official implemented "a policy so deficient that the policy itself is a repudiation of the constitutional rights and is the moving force of the constitutional violation." *Redman v. Cnty. of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (citations & quotations marks omitted), *abrogated on other grounds by Farmer v. Brennan*, 511 U.S. 825 (1970).

To prove liability for an action or policy, the plaintiff "must ... demonstrate that his deprivation resulted from an official policy or custom established by a ... policymaker possessed

4

with final authority to establish that policy." *Waggy v. Spokane Cnty. Washington*, 594 F.3d 707, 713 (9th Cir. 2010). When a defendant holds a supervisory position, the causal link between such defendant and the claimed constitutional violation must be specifically alleged. *See Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979). Vague and conclusory allegations concerning the involvement of supervisory personnel in civil rights violations are not sufficient. *See Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

## IV.    DISCUSSION

### A.  Plaintiff's First Amended Complaint

Plaintiff names A. Rocha, H. Florez, E. Magallanes, and "Sergeant John Doe," all employed at California State Prison, Corcoran (COR), as defendants in this action. (Doc. 20 at 2-3.) He seeks a jury trial, and compensatory and punitive damages of $100,000 each per defendant. (*Id*. at 8.)

### B.  Plaintiff's Claims[1]

### Claim One: Factual Allegations

Plaintiff contends that on June 27, 2021, he was "attacked again by his then cellmate" inmate Tenner. (Doc. 20 at 4.) Plaintiff ran from the unit to the office and asked Defendant Rocha for help "due to his cellies homosexual attack." (*Id*.) Rocha stated, "'since your bugging me I can move you.'" (*Id*.) When Plaintiff asked why he had to be moved when Tenner was the problem, Rocha stated, "'You have nothing coming because of all the complaints he has filed on staff.'" (*Id*.) Rocha then told Plaintiff to "'Man up if you don't go back to your cell I'm going to issue you a 115 (rule violation).'" (*Id*.) Plaintiff asserts he refused to return to his cell out of fear for his safety; instead, he asked "to be taken to the hole (administrative solitary segregation)." (*Id*.)

Next, Plaintiff alleges Defendant Rocha placed him in a holding cell and "said, 'Let me call the sergeant' because he needed instruction on what to do showing his inexperience as a correctional officer." (Doc. 20 at 4.) Defendants Rocha, Florez, and Doe then approached Plaintiff and Rocha advised Plaintiff had "3 options and they are to go to the hole, to go talk to

---

[1] Because Plaintiff does not clearly state which claims are asserted against which Defendants (*see* Doc. 20 at 3, 6), the Court considers both claims against all named Defendants.

inmates in A-section … or go back to initial cell with Tenner the booty bandit and Man Up being funny referencing for plaintiff to put his booty in the air in the cell for Tenner." (*Id.*) A-section inmates advised Plaintiff "there was no move available" for him, so he then asked Rocha and Florez "emparitively [sic] to be taken to the hole because he had enemy and safety concerns" because Tenner stabbed Plaintiff "with a pencil and he didn't want to kill inmate Tenner in the middle of the night." (*Id.*) However, Rocha and Florez forced Plaintiff to return to his cell. (*Id.*) Rocha and Florez threatened to file rule violations "that would have been falsified" and threatened to use force. (*Id.* at 5.) When Plaintiff stated he would file a grievance and a lawsuit for a failure to protect, "out of nowhere like a tornado storm Rocha and Florez [rushed]" him, yelling "stop attacking an officer and stop resisting." (*Id.*) Plaintiff asserts Rocha and Florez "smash[ed]" him into the holding tank gate, aggressively searched him, instructed him to "put down the weapon," and then Rocha grabbed Plaintiff by the back of the neck and smashed his forehead into the gate "trying to knock him out," causing a "swollen knot" on Plaintiff's forehead the "size of a marble the big marble." (*Id.*) Florez then grabbed Plaintiff by the back of the neck and punched him in the back, causing Plaintiff to scream for a nurse. (*Id.*)

Plaintiff asserts Defendants Rocha and Florez "refused to call medical man down for plaintiff upon his request or let him go to the nurse station" and threatened to kill him and issue a 115 "and in their words 'that he better not snitch.'" (Doc. 20 at 5.) Back in the cell, Tenner "attacked plaintiff again" and Plaintiff contends that before the attack "Tenner got the okay from Florez and Rocha asking them if it was ok if he got down with plaintiff because he was getting on there nerves and he was a pervert because he like women and not little boys." (*Id.*) Plaintiff contends Rocha and Florez gave Tenner "the thumbs up and said 'go handle it we hate Williams.'" (*Id.*) Defendant Rocha issued a retaliatory 115 "that was later dismissed because it was falsified." (*Id.*)

Plaintiff contends Defendant Doe failed to protect him because Doe "instructed Defendants to place [him] back in the cell with inmate Tenner if that is what they did which could only been done under the Sergeants orders." (Doc. 20 at 5.) Plaintiff maintains that Rocha, Florez, and Doe "held no penological interest," their actions were not taken "to advance a legitimate

6

correctional goal," and his First Amendment right to file a grievance "was chilled outright" because he "did not file any grievance on any issue in claim one due to threats and actions of retaliation by defendants." (*Id.*)

### Claim One: Applicable Legal Standards

#### *Eighth Amendment Excessive Force*

"[T]he unnecessary and wanton infliction of pain on prisoners constitutes cruel and unusual punishment" in violation of the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 328 (1986) (internal quotation marks & citation omitted). As courts have succinctly observed, "[p]ersons are sent to prison as punishment, not *for* punishment." *Gordon v. Faber*, 800 F. Supp. 797, 800 (N.D. Iowa 1992) (citation omitted, quoting *Battle v. Anderson*, 564 F.2d 388, 395 (10th Cir. 1977), aff'd, 973 F.2d 686 (10th Cir. 1992)). "Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Farmer*, 511 U.S. at 834 (internal quotation marks & citation omitted).

A correctional officer engages in excessive force in violation of the Cruel and Unusual Punishments Clause if he (1) uses excessive and unnecessary force under all the circumstances, and (2) "harms an inmate for the very purpose of causing harm," and not "as part of a good-faith effort to maintain security." *Hoard v. Hartman*, 904 F.3d 780, 788 (9th Cir. 2018). In other words, "whenever prison officials stand accused of using excessive physical force …, the core judicial inquiry is … whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). In making this determination, courts may consider "the need for application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Id.* at 7. Courts may also consider the extent of the injury suffered by the prisoner. *Id.* However, the absence of serious injury is not determinative. *Id.*

The Supreme Court has made clear that "not 'every malevolent touch by a prison guard gives rise to a federal cause of action'" under the Eighth Amendment. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (citations omitted). Conversely, the absence of "significant" injury is not

7

dispositive of a claim of excessive force. *See id*. at 36-37. But the extent of an inmate's injury is one factor indicative of whether the force used was necessary in a particular situation. Moreover, if force is applied maliciously and sadistically, liability is not avoided "merely because [the plaintiff] had the good fortune to escape without serious injury." *Id*. at 37. Put another way, there is no "de minimis" level of injury that is an acceptable result of excessive force under the Eighth Amendment. *Id*. at 38-40; *see also Oliver v. Keller*, 289 F.3d 623, 628 (9th Cir. 2002) (Eighth Amendment excessive force standard examines de minimis uses of force, not de minimis injuries).

### *Eighth Amendment Failure to Protect*

Prison officials have a duty "to take reasonable measures to guarantee the safety of inmates, which has been interpreted to include a duty to protect prisoners." *Labatad v. Corrections Corp. of America,* 714 F.3d 1155, 1160 (9th Cir. 2013) (citing *Farmer*, 511 U.S. at 832-33 & *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005)). To establish a violation of this duty, a prisoner must "show that the officials acted with deliberate indifference to threat of serious harm or injury to an inmate." *Labatad*, 714 F.3d at 1160 (citing *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002)).

A failure to protect claim under the Eighth Amendment requires a showing that "the official [knew] of and disregard[ed] an excessive risk to inmate ... safety." *Farmer*, 511 U.S. at 837. "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, ... and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* at 842 (citations omitted). The duty to protect a prisoner from serious harm requires that prison officials take reasonable measures to guarantee the safety and well-being of the prisoner. *Id*. at 832-33; *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). As "only the unnecessary and wanton infliction of pain implicates the Eighth Amendment," plaintiff must allege facts showing the defendant acted with a "sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 297 (1991) (internal quotations marks, emphasis & citations omitted).

8

To state a claim, the Eighth Amendment requires allegations sufficient to plausibly show that prison officials were deliberately indifferent to a substantial risk of harm or safety. *Farmer*, 511 U.S. at 847. The objective component of an Eighth Amendment requires that a prisoner show he was deprived of something "sufficiently serious." *Foster v. Runnels*, 554 F.3d 807, 812 (9th Cir. 2009) (quoting *Farmer*, 511 U.S. at 834. The state of mind requirement under the subjective component of the Eighth Amendment standard has been defined as "deliberate indifference" to an inmate's health or safety. *Farmer*, 511 U.S. at 834. Under the "deliberate indifference" standard, a prison official cannot be found liable for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety. *Id*. at 837.

### *Eighth Amendment Deliberate Indifference*

Prison officials violate the Eighth Amendment if they are "deliberate[ly] indifferen[t] to [a prisoner's] serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "A medical need is serious if failure to treat it will result in '"significant injury or the unnecessary and wanton infliction of pain."'" *Peralta v. Dillard*, 744 F.3d 1076, 1081-82 (9th Cir. 2014) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds by *WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc)).

To maintain an Eighth Amendment claim based on medical care in prison, a plaintiff must first "show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Second, the plaintiff must show the defendants' response to the need was deliberately indifferent." *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (quoting *Jett*, 439 F.3d at 1096 (quotation marks omitted)).

As to the first prong, indications of a serious medical need "include the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (citation & internal quotation marks omitted); accord *Wilhelm*, 680 F.3d at

9

1122; *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) ("Examples of serious medical needs include '[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain'").

As to the second prong, deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" *Farmer*, 511 U.S. at 835 (quoting *Whitley*, 475 U.S. at 319).  Deliberate indifference is shown where a prison official "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."  *Id*. at 847. In medical cases, this requires showing: (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. *Wilhelm*, 680 F.3d at 1122 (quoting *Jett*, 439 F.3d at 1096). "A prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." *Jett*, 439 F.3d at 1096, citing *McGuckin*, 974 F.2d at 1060.

Deliberate indifference is a high legal standard. *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id*. at 1057 (quoting *Farmer*, 511 U.S. at 837). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" *Id*. (quoting *Gibson,* 290 F.3d at 1188).

To prevail on a deliberate-indifference claim, a plaintiff must also show that harm resulted from a defendant's wrongful conduct. *Wilhelm*, 680 F.3d at 1122; *see Jett*, 439 F.3d at 1096; *Hallett v. Morgan*, 296 F.3d 732, 746 (9th Cir. 2002) (prisoner alleging deliberate indifference based on delay in treatment must show delay led to further injury).

### *First Amendment Retaliation*

Prisoners have a First Amendment right to file prison grievances and lawsuits and retaliation against prisoners for exercising this right is a constitutional violation. *Rhodes v. Robinson*, 408 F.3d 559, 566 (9th Cir. 2005). A claim for First Amendment retaliation in the

prison context requires: (1) that a state actor took some adverse action against the plaintiff (2) because of (3) the plaintiff's protected conduct, and that such action (4) chilled the plaintiff's exercise of his First Amendment rights, and (5) "the action did not reasonably advance a legitimate correctional goal." *Id.* at 567-68. To prove the second element, retaliatory motive, plaintiff must show that his protected activities were a "substantial" or "motivating" factor behind the defendant's challenged conduct. *Brodheim v. Cry*, 584 F.3d 1262, 1269, 1271 (9th Cir. 2009). Plaintiff must provide direct or circumstantial evidence of defendant's alleged retaliatory motive; mere speculation is not sufficient. *See McCollum v. CDCR*, 647 F.3d 870, 882–83 (9th Cir. 2011); accord, *Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014). In addition to demonstrating defendant's knowledge of plaintiff's protected conduct, circumstantial evidence of motive may include: (1) proximity in time between the protected conduct and the alleged retaliation; (2) defendant's expressed opposition to the protected conduct; and (3) other evidence showing that defendant's reasons for the challenged action were false or pretextual. *McCollum*, 647 F.3d at 882.

### Claim One: Analysis

Liberally construing the first amended complaint and accepting all facts as true, Plaintiff states plausible excessive force claims against Defendants Rocha and Florez. He contends that Rocha and Florez rushed him "out of nowhere," pushing him into the holding tank gate, that Rocha grabbed him and smashed his forehead into the gate "trying to knock him out" causing injury, and that Florez then grabbed him by the neck and punched him in the back causing him to cry out. Plaintiff fails to assert an excessive force claim against Defendants Magallanes or Doe because no facts are alleged to suggest they were involved in any way.

Next, Plaintiff states plausible failure to protect claims against Defendants Rocha and Florez because they are alleged to have known inmate Tenner posed an excessive risk to Plaintiff but failed to take reasonable measures to guarantee his safety. *Farmer*, 511 U.S. at 832-33, 837. However, Plaintiff fails to state a failure to protect claim against Defendant Doe because he alleges only that Doe was present when Rocha gave him three options: "go to the hole, to go talk to inmates in A-section … or go back to initial cell." At that point, the options remained available

11

and it cannot be said Doe failed to guarantee Plaintiff's safety. Concerning Plaintiff's assertion that Doe "instructed Defendants to place [him] back in the cell with inmate Tenner if that is what they did which could only been done under the Sergeants orders," that assertion is speculation on Plaintiff's part. Simply put, no *facts* alleged indicate Doe was present or involved after Plaintiff was given three options and what is alleged is insufficient to permit the drawing of any reasonable inference that Doe was present or otherwise involved. Therefore, Plaintiff has failed to allege Doe was deliberately indifferent. And Plaintiff fails to allege a failure to protect claim against Defendant Magallanes because no facts alleged indicate Magallanes was present or involved.

Next, Plaintiff states plausible deliberate indifference to serious medical needs claims against Defendants Rocha and Florez because he alleges they refused to allow him to see a nurse after he suffered an injury to his forehead causing a "swollen knot." Plaintiff fails to assert a deliberate indifference to serious medical needs claim against Defendants Magallanes or Doe because no facts are alleged establishing or permitting the drawing of any reasonable inference they were present or involved at the time Plaintiff sought medical care.

Finally, Plaintiff states plausible retaliation claims against Defendants Rocha and Florez given the allegations they took adverse actions against him because he filed grievances and complaints by physically assaulting him, and that those actions chilled the exercise of his First Amendment rights because he did not file a grievance thereafter and that their actions did not reasonably advance a legitimate correctional goal. Plaintiff fails to state a plausible claim against Defendant Doe because no facts alleged indicate that Doe took adverse action against Plaintiff because he filed grievances or complaints. Thus, Plaintiff did not adequately allege retaliatory motive by Doe and instead offers only speculation. And, again, Plaintiff fails to allege a retaliation claim against Defendant Magallanes because no facts are asserted in this claim involve Magallanes.

### Claim Two: Factual Allegations

Plaintiff contends that on July 18, 2021, he was called to the program office. (Doc. 20 at 7.) As he reached the door, Defendant Florez "made numerous threats upon his safety after

12

poking plaintiff in the chest and head." (*Id*.) Plaintiff states that after learning Florez "was listed as staff assistant due to plaintiffs' mental health status," Florez grabbed Plaintiff by the neck, lifting him off the ground and holding him against a wall. (*Id*.) Florez then punched Plaintiff in the stomach and when Plaintiff slid down the wall to the ground, Florez kicked him in the ribs. (*Id*.) While Plaintiff was on the ground, Defendant Magallanes exited the program office and Correctional Officer A. Franco[2] exited another office. (*Id*.) Magallanes loudly stated, "'that's how you follow orders get his ass out of here and Williams if you say anything or go to medical your dead.'" (*Id*.) Plaintiff contends Magallanes is "liable for the excessive force and failure to protect because he clearly ordered defendant Florez to assault" him and Magallanes did nothing to stop or intervene in the assault by Florez. (*Id*.)

Next, Plaintiff asserts that Florez grabbed him "off the ground." (Doc. 20 at 7.) When Officer Franco said, "that's not cool guys," Florez replied, "'I'm just finishing up what I didn't finish before.'" (*Id*.) Then Florez threw Plaintiff "through the door like a rag doll to give example it was like when Eddie Murphy was thrown threw the glass for being black in Beverly Hills just without the glass." (*Id*.) Plaintiff states he "stumbled and stumbled up into a full run." (*Id*.) At that point, Plaintiff yelled to Officer Franco to "call [him] a nurse." (*Id*.) Plaintiff contends he "ran full speed across the yard in pain back to his unit in fear of death observed by multiple inmates and staff." (*Id*.)

### Claim Two: Applicable Legal Standards

Plaintiff asserts Eighth Amendment excessive force, failure to protect, and deliberate indifference to serious medical needs claims. The applicable standards are provided above and will not be repeated here.

### Claim Two: Analysis

Liberally construing the first amended complaint and accepting all facts as true, Plaintiff plausibly alleges Eighth Amendment excessive force and failure to protect claims against Defendants Florez and Magallanes. He contends Florez physically assaulted him without

---

[2] Officer Franco is not named as a defendant in this action.

13

justification, deliberately indifferent to his health and safety, and that Magallanes condoned Florez's assault, and was present and failed to intervene. Further, Plaintiff plausibly alleges deliberate indifference to serious medical needs claims against Florez and Magallanes because it can be reasonably inferred Plaintiff's request for a nurse, although directed to Officer Franco, was heard by Florez and Magallanes. It also can be reasonably inferred that Florez and Magallanes were deliberately indifferent to Plaintiff's medical need where Plaintiff fled back to his unit and no facts alleged indicate Plaintiff was seen by medical staff following the incident, and where Plaintiff alleges Magallanes threatened him if he were to "go to medical." Because no facts are alleged regarding Defendants Rocha or Doe, no claims upon which relief can be granted are stated against Rocha and Doe in Claim Two.

**Screening Summary**

Regarding Claim One, Plaintiff states plausible Eighth Amendment claims against Rocha and Florez for excessive force, failure to protect, and deliberate indifference to serious medical needs, and plausible First Amendment retaliation claims against Defendants Rocha and Florez. However, Plaintiff fails to allege any other cognizable claim against Defendants Doe or Magallanes, or any other named defendant.

Regarding Claim Two, Plaintiff states plausible Eighth Amendment claims against Defendants Florez and Magallanes for excessive force, failure to protect, and deliberate indifference to serious medical needs. He fails to allege any other claim against Defendants Rocha or Doe, or any other named defendant.

The Court concludes granting further leave to amend would be futile. *See Hartman v. CDCR*, 707 F.3d 1114, 1129-30 (9th Cir. 2013) (affirming dismissal of first amended complaint and finding leave to amend futile where complaint's allegations belied plaintiff's entitlement to relief). Therefore, the Court will recommend this action proceed on Plaintiff's cognizable claims against Defendants Rocha, Florez, and Magallanes, and that Defendant Doe be dismissed.

**V.    CONCLUSION AND RECOMMENDATIONS**

Accordingly, the Court **HEREBY ORDERS** the Clerk of the Court to randomly assign a district judge to this action.

14

Further, for the reasons given above, the undersigned **HEREBY RECOMMENDS** that:

1. This action **PROCEED** only on Plaintiff's Eighth Amendment claims for excessive force, failure to protect, and deliberate indifference to serious medical needs against Defendants Rocha and Florez as asserted in Claim One, First Amendment retaliation claims against Defendants Rocha and Florez as asserted in Claim One, and Eighth Amendment excessive force, failure to protect, and deliberate indifference to serious medical needs against Defendants Florez and Magallanes as asserted in Claim Two;

2. Defendant Doe be **DISMISSED** from the action; and

3. Any remaining claims against any other named defendant be **DISMISSED**.

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). **Within 14 days** after being served with a copy of these Findings and Recommendations, a party may file written objections with the Court. Local Rule 304(b). The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and **shall not exceed fifteen (15) pages** without leave of Court and good cause shown. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the fifteen (15) page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C). A party's failure to file any objections within the specified time may result in the waiver of certain rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:   **March 23, 2026**                          _____

UNITED STATES MAGISTRATE JUDGE

15